Opinion of the court filed PER CURIAM. Dissenting opinion filed by Circuit Judge NEWMAN. Dissenting opinion filed by Circuit Judge LINN, in which Circuit Judges DYK, PROST, and O’MALLEY join.
PER CURIAM.
When a single actor commits all the elements of infringement, that actor is liable for direct infringement under 35 U.S.C. § 271(a). When a single actor induces another actor to commit all the elements of infringement, the first actor is liable for induced infringement under 35 U.S.C. § 271(b). But when the acts necessary to give rise to liability for direct infringement are shared between two or more actors, doctrinal problems arise. In the two cases before us, we address the question whether a defendant may be held liable for induced infringement if the defendant has performed some of the steps of a claimed method and has induced other parties to commit the remaining steps (as in the Akamai case), or if the defendant has induced other parties to collectively perform all the steps of the claimed method, but no single party has performed all of the steps itself (as in the McKesson case).
The problem of divided infringement in induced infringement cases typically arises only with respect to method patents. When claims are directed to a product or apparatus, direct infringement is always present, because the entity that installs the final part and thereby completes the *1306 claimed invention is a direct infringer. But in the case of method patents, parties that jointly practice a patented invention can often arrange to share performance of the claimed steps between them. In fact, sometimes that is the natural way that a particular method will be practiced, as the eases before us today illustrate. Recent precedents of this court have interpreted section 271(b) to mean that unless the accused infringer directs or controls the actions of the party or parties that are performing the claimed steps, the patentee has no remedy, even though the patentee’s rights are plainly being violated by the actors’ joint conduct. We now conclude that this interpretation of section 271(b) is wrong as a matter of statutory construction, precedent, and sound patent policy.
Much of the briefing in these cases has been directed to the question whether direct infringement can be found when no single entity performs all of the claimed steps of the patent. It is not necessary for us to resolve that issue today because we find that these cases and cases like them can be resolved through an application of the doctrine of induced infringement. In doing so, we reconsider and overrule the 2007 decision of this court in which we held that in order for a party to be liable for induced infringement, some other single entity must be liable for direct infringement. BMC Resources, Inc. v. Paymentech, L.P., 498 F.3d 1373 (Fed.Cir.2007). To be clear, we hold that all the steps of a claimed method must be performed in order to find induced infringement, but that it is not necessary to prove that all the steps were committed by a single entity.
I
The essential facts of the cases before us are as follows:
Akamai Technologies, Inc., owns a patent that covers a method for efficient delivery of web content. The claimed method consists of placing some of a content provider’s content elements on a set of replicated servers and modifying the content provider’s web page to instruct web browsers to retrieve that content from those servers. Akamai filed a complaint against Limelight Networks, Inc., alleging infringement of the patent. In its complaint, Akamai alleged both direct and induced infringement. Limelight maintains a network of servers and, as in the patented method, it allows for efficient content delivery by placing some content elements on its servers. Limelight, however, does not modify the content providers’ web pages itself. Instead, Limelight instructs its customers on the steps needed to do that modification.
McKesson Information Solutions LLC owns a patent covering a method of electronic communication between healthcare providers and their patients. McKesson filed a complaint against Epic Systems Corp. alleging that Epic induced infringement of the patent. Epic is a software company that licenses its software to healthcare organizations. The licensed software includes an application called “MyChart,” which permits healthcare providers to communicate electronically with patients. McKesson alleged that Epic induced Epic’s customers to infringe McKesson’s patent. Epic does not perform any steps of the patent. Instead, those steps are divided between patients, who initiate communications, and healthcare providers, who perform the remainder of the steps.
In the respective district court cases, Limelight and Epic were held not to infringe the patents asserted against them. In Akamai, because Limelight’s customers (and not Limelight itself) performed one of the steps of the claimed method, the district court granted Limelight’s motion for judgment as a matter of law based on this court’s opinions in BMC and Muniauction, *1307 Inc. v. Thomson Corp., 532 F.3d 1318 (Fed.Cir.2008). In McKesson, the district court relied on the same cases to grant summary judgment of noninfringement on the ground that the patients (and not Epic’s direct customers) performed the step of initiating the communication.
II
A
This court has held that for a party to be liable for direct patent infringement under 35 U.S.C. § 271(a), that party must commit all the acts necessary to infringe the patent, either personally or vicariously. See Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1311 (Fed.Cir.2005); Fromson v. Advance Offset Plate, Inc., 720 F.2d 1565, 1568 (Fed.Cir.1983). In the context of a method claim, that means the accused infringer must perform all the steps of the claimed method, either personally or through another acting under his direction or control. Direct infringement has not been extended to cases in which multiple independent parties perform the steps of the method claim. Because direct infringement is a strict liability tort, it has been thought that extending liability in that manner would ensnare actors who did not themselves commit all the acts necessary to constitute infringement and who had no way of knowing that others were acting in a way that rendered their collective conduct infringing. See In re Seagate Tech., LLC, 497 F.3d 1360, 1368 (Fed.Cir.2007) (en banc) (“Because patent infringement is a strict liability offense, the nature of the offense is only relevant in determining whether enhanced damages are warranted.”). For that reason, this court has rejected claims of liability for direct infringement of method claims in cases in which several parties have collectively committed the acts necessary to constitute direct infringement, but no single party has committed all of the required acts. See BMC, 498 F.3d at 1381 (“Direct infringement is a strict-liability offense, but it is limited to those who practice each and every element of the claimed invention.”); see also Muniauction, 532 F.3d at 1329 (same).
To be sure, the court has recognized that direct infringement applies when the acts of infringement are committed by an agent of the accused infringer or a party acting pursuant to the accused infringer’s direction or control. See BMC, 498 F.3d at 1380. Absent an agency relationship between the actors or some equivalent, however, a party that does not commit all the acts necessary to constitute infringement has not been held liable for direct infringement even if the parties have arranged to “divide” their acts of infringing conduct for the specific purpose of avoiding infringement liability. See Cross Med. Prods., 424 F.3d at 1311 (no liability for direct infringement if the party that is directly infringing is not acting as an agent of, or at the direction of, the accused infringer).
Because the reasoning of our decision today is not predicated on the doctrine of direct infringement, we have no occasion at this time to revisit any of those principles regarding the law of divided infringement as it' applies to liability for direct infringement under 35 U.S.C. § 271(a).
B
The induced infringement provision of the Patent Act, 35 U.S.C. § 271(b), provides that “[wjhoever actively induces infringement of a patent shall be liable as an infringer.” Because section 271(b) extends liability to a party who advises, encourages, or otherwise induces others to engage in infringing conduct, it is well suited to address the problem presented by the cases before us, i.e., whether liability should extend to a party who induces the *1308 commission of infringing conduct when no single “induced” entity commits all of the infringing acts or steps but where the infringing conduct is split among more than one other entity.
Induced infringement is in some ways narrower than direct infringement and in some ways broader. Unlike direct infringement, induced infringement is not a strict liability tort; it requires that the accused inducer act with knowledge that the induced acts constitute patent infringement. See Global-Tech Appliances, Inc. v. SEB S.A, — U.S. -, 131 S.Ct. 2060, 2068, 179 L.Ed.2d 1167 (2011). In fact, this court has described the required intent as follows: “[Ijnducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another’s infringement.” DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306 (Fed.Cir.2006) (en banc) (internal quotation marks omitted).[1] On the other hand, inducement does not require that the induced party be an agent of the inducer or be acting under the inducer’s direction or control to such an extent that the act of the induced party can be attributed to the inducer as a direct infringer. It is enough that the inducer “cause[s], urge[s], encourage[s], or aid[s]” the infringing conduct and that the induced conduct is carried out. Arris Grp., Inc. v. British Telecomms. PLC, 639 F.3d 1368, 1379 n. 13 (Fed.Cir.2011); see also Tegal Corp. v. Tokyo Electron Co., 248 F.3d 1376, 1379 (Fed.Cir.2001); Nat’l Presto Indus., Inc. v. West Bend Co., 76 F.3d 1185, 1196 (Fed.Cir.1996) (analogizing inducement to aiding and abetting violations of criminal laws).
An important limitation on the scope of induced infringement is that inducement gives rise to liability only if the inducement leads to actual infringement. That principle, that there can be no indirect infringement without direct infringement, is well settled. Deepsouth Packing Co. v. Laitram Corp., 406 U.S. 518, 526, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972); Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 341, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961); Henry v. A.B. Dick Co., 224 U.S. 1, 12, 32 S.Ct. 364, 56 L.Ed. 645 (1912). The reason for that rule is simple: There is no such thing as attempted patent infringement, so if there is no infringement, there can be no indirect liability for infringement.
That much is uncontroversial. In BMC, however, this court extended that principle in an important respect that warrants reconsideration. In that case, the court ruled that in order to support a finding of induced infringement, not only must the inducement give rise to direct infringement, but in addition the direct infringement must be committed by a single actor. The court reached that conclusion based on the propositions that (1) liability for induced infringement requires proof of direct infringement and (2) liability for direct infringement requires that a single party commit all the acts necessary to constitute infringement. While those two propositions were well supported in this court’s law, the conclusion that the court drew from them was not.
Requiring proof that there has been direct infringement as a predicate for induced infringement is not the same as requiring proof that a single party would *1309 be liable as a direct infringer. If a party has knowingly induced others to commit the acts necessary to infringe the plaintiffs patent and those others commit those acts, there is no reason to immunize the inducer from liability for indirect infringement simply because the parties have structured their conduct so that no single defendant has committed all the acts necessary to give rise to liability for direct infringement.
A party who knowingly induces others to engage in acts that collectively practice the steps of the patented method — and those others perform those acts — has had precisely the same impact on the patentee as a party who induces the same infringement by a single direct infringer; there is no reason, either in the text of the statute or in the policy underlying it, to treat the two inducers differently. In particular, there is no reason to hold that the second inducer is liable for infringement but the first is not.
Likewise, a party who performs some of the steps itself and induces another to perform the remaining steps that constitute infringement has precisely the same impact on the patentee as a party who induces a single person to carry out all of the steps. It would be a bizarre result to hold someone liable for inducing another to perform all of the steps of a method claim but to hold harmless one who goes further by actually performing some of the steps himself. The party who actually participates in performing the infringing method is, if anything, more culpable than one who does not perform any steps.
The text of the induced infringement statute is entirely consistent with this analysis. While the direct infringement statute, section 271(a), states that a person who performs the acts specified in the statute “infringes the patent,” section 271(b) is structured differently. It provides that whoever “actively induces infringement of a patent shall be liable as an infringer.” Nothing in the text indicates that the term “infringement” in section 271(b) is limited to “infringemént” by a single entity. Rather, “infringement” in this context appears to refer most naturally to the acts necessary to infringe a patent, not to whether those acts are performed by one entity or several.
C
The legislative history of the 1952 Patent Act provides strong support for interpreting induced infringement not to require that a single entity — as opposed to multiple entities — commit all the acts necessary to constitute infringement. Prior to the 1952 Act, inducement and contributory infringement were both referred to under the rubric of contributory infringement. Giles S. Rich, Infringement Under Section 271, 21 Geo. Wash. L.Rev. 521, 537 (1953). The 1952 Act broke the two concepts out into separate subsections of section 271, covering induced infringement (in subsection (b)) and contributory infringement (in subsection (c)). Subsection (b), the new inducement provision, was broad in scope. The House Report on the 1952 Act explained that the new subsection (b) “recites in broad terms that one who aids and abets an infringement is likewise an infringer.” H.R.Rep. No. 82-1923, at 9. See also P.J. Federico, Commentary on the New Patent Act reprinted in 75 J. Pat. & Trademark Off. Soc’y 161, 214 (1993) (section 271(b) “is a broad statement and enactment of the principle that one who actively induces infringement of a patent is likewise liable for infringement”).[2] On the *1310 other hand, subsection (c) represented a compromise between differing views as to the proper scope of the doctrine of contributory infringement. The portions of the legislative history addressing subsection (c) show that it was responding to the Supreme Court’s decisions in several then-recent cases that had applied the doctrine of patent misuse in a way that substantially restricted the scope of contributory infringement.[3] The compromise that Congress adopted with respect to subsection (c) restored the doctrine of contributory infringement and confined the scope of the Supreme Court’s patent misuse cases, but it did not go as far as some in the patent bar would have liked. See Hearing on H.R. 3866 Before Subcomm. No. 4 of the H. Comm, on the Judiciary, 81st Cong. 20 (1949) (“1949 Hearing”) (statement of G. Rich) (“So we have made what we consider to be a fair compromise, and we have pushed back these misuse situations to cover only those cases where we think the patentee is entitled to honest protection and justice.”).
Although less was said about induced infringement than about contributory infringement in the legislative history, what was said was significant. Giles Rich, one of the principal drafters of the statute, and a frequent witness at hearings on the legislation, made clear in the course of his statement during an early House hearing on contributory infringement that the revised provisions on infringement were intended to reach cases of divided infringement, even when no single entity would be liable for direct infringement. In the course of his statement commenting on the proposed version of what was to become section 271(b) of the 1952 Act, Judge (then Mr.) Rich addressed the problem of “combination patents” and stated the following:
Improvements in such arts as radio communication, television, etc., sometimes involve the new combinations of elements which in use are normally owned by different persons. Thus, a new method of radio communication may involve a change in the transmitter and a corresponding change in the receiver. To describe such an invention in patent claims, it is necessary either to specify a new method which involves both transmitting and receiving, or a new combination of an element in the receiver and an element in the transmitter. There are patents with such claims covering television inventions of importance.
The recent decisions of the Supreme Court [the cases targeted by the statutory changes] appear to make it impossible to enforce such patents in the usual case where a radio transmitter and a radio receiver are owned and operated by different persons, for, while there is obvious infringement of the patent, there is no direct infringer of the patent but only two contributory infringers.
Contributory Infringement of Patents: Hearings Before the Subcomm. on Patents, Trade-marks, and Copyrights of the H. Comm, on the Judiciary, 80th Cong. 5 (1948) (“1948 Hearing”) (statement of G. Rich on behalf of the New York Patent Law Association) (emphasis added).
*1311 Judge Rich’s statement makes clear that he saw no anomaly in finding liability for indirect infringement when there was “obvious infringement of the patent” even though there was “no direct infringer of the patent.” In the hypothetical case that he described, involving a claim to a method in which changes would be made in both a transmitter and a receiver, he expressly stated that the “obvious infringement” should be remediable, even though “there is no direct infringer” of the patent, a description that perfectly fits the two cases before us.
As if to lay to rest any doubts as to his views of the proper scope of indirect infringement under the new statute, Judge Rich added, in response to questioning, that “contributory infringement [apparently referring to both contributory infringement and induced infringement] is a specific application to patent law of the law of joint tort feasor where two people somehow together create an infringement which neither one of them individually or independently commits.” Id. at 12; see also 1949 Hearing 3 (remarks of G. Rich) (“When two people combine and infringe a patent in some way or other, they are joint tort feasors, and it so happens that patents are often infringed by people acting in concert, either specifically or by implication, where neither one of them is a direct infringer.”). Again, Judge Rich’s comments clearly indicate that he viewed indirect infringement as an available remedy even in the absence of any single direct infringer.
The principles of contributory and induced infringement set forth in the earlier bills were carried forward into the 1952 Act and continued to serve the purpose of restoring the principles of contributory infringement that had been cast into doubt by the then-recent patent misuse decisions. See H.R.Rep. No. 82-1923, at 9 (1952); Patent Law Codification and Revision, Hearings Before Subcomm. No. S of the H. Comm, on the Judiciary, 82d Cong. 151— 52 (1951); Rich, Infringement Under Section 271, supra, at 535-36, 541 (substance of 271 was carried forward from previous bills).
D
A principal’s liability for acts committed not only through an agent but also by an innocent intermediary who was induced by the principal is not an idiosyncrasy of patent law, but is found in other areas of the law as well. For example, the aiding and abetting provision in the Federal Criminal Code states, in language similar to the language of section 271(b) of the Patent Act, that “[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission is punishable as a principal,” 18 U.S.C. § 2(a), and “[w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal,” id. § 2(b). That statute has been construed to permit the conviction of an accessory who induces or causes a criminal offense even when the principal is found not liable for the unlawful conduct. Standefer v. United States, 447 U.S. 10, 19, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980). As long as the induced criminal conduct has occurred, the inducer’s liability does not turn on whether the intermediary is factually guilty or even capable of committing the charged offense. See United States v. Tobon-Builes, 706 F.2d 1092, 1099 (11th Cir.1983) (defendant is liable if he causes an intermediary to commit a criminal act, even though the intermediary who performed the act has no criminal intent and hence is innocent of the substantive crime charged); United States v. Gleason, 616 F.2d 2, 20 (2d Cir.1979) (“[A] person who causes an innocent party to commit an act *1312 which, if done with the requisite intent, would constitute an offense may be found guilty as a principal even though he personally did not commit the criminal act.”); United States v. Rapoport, 545 F.2d 802, 806 (2d Cir.1976) (“Section 2(b) ... ‘removes all doubt that one who puts in motion or assists in the illegal enterprise or causes the commission of an indispensable element of the offense by an innocent agent or instrumentality, is guilty....’”) (quoting Reviser’s Note to section 2(b)).[4] Under that provision, a defendant cannot avoid criminal liability by arranging for another to perform some part of the proscribed conduct. See United States v. Hornaday, 392 F.3d 1306, 1313 (11th Cir.2004) (“Section 2(b) ... is obviously designed for the situation in which ... the defendant supplies the intent and maybe another element or two while getting someone else to supply at least one additional element that is necessary to the commission of the crime.”); United States v. Pearson, 667 F.2d 12, 13 (5th Cir.1982) (Section 2 “allows a jury to find a person guilty of a substantive crime even though that person did not commit all acts constituting the elements of the crime.”).
Tort law also recognizes the doctrine of liability for inducing innocent actors to commit tortious acts. The Second Restatement of Torts provides that a person is liable for tortious conduct if he “orders or induces the conduct, if he knows or should know of circumstances that would make the conduct tortious if it were his own.” Restatement (Second) of Torts § 877(a) (1979). That basis for liability is “independent of the existence of liability” based “on the ground that [the defendant] was principal or master.” Id. § 877 cmt. a.
The analogy to tort law is particularly telling because for induced infringement under section 271(b) the courts look to the common law principles of joint tortfeasance. Hewlett-Packard Co. v. Bausch & Lomb, Inc., 909 F.2d 1464, 1469 (Fed.Cir.1990); see also Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 500, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964). Prior to the enactment of the Patent Act in 1952, courts applied indirect infringement to anyone who “commands, directs, advises, encourages, procures, instigates, promotes, controls, aids, or abets” patent infringement. Rich, Infringement Under Section 271, supra, at 525. Section 271(b) was enacted to codify that doctrine, which in turn was based on “the old common law doctrine of joint tort feasors.” Id. at 537. In that setting, liability requires proof that the defendant “knowingly induced infringement and possessed specific intent to encourage another’s infringement.” DSU Med. Corp., 471 F.3d at 1306.
The First Restatement of Torts, which was in effect at the time the 1952 Patent Act was enacted, draws an even sharper line than the Second Restatement between vicarious liability for tortious conduct and liability for inducing tortious conduct by others. Section 877 of the First Restatement sets forth the rules of vicarious liability for “a person directing or permitting conduct of another.” Restatement of Torts § 877 (1938). Section 876 sets forth the rules of liability for inducement of tortious *1313 conduct, including the requirement of scienter. It states that a person is liable if he “orders or induces [tortious] conduct, knowing of the conditions under which the act is done or intending the consequences which ensue,” or if he “knows that the other’s conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.” Id. § 876.
Moreover, the First Restatement makes clear that the rule imposing liability for inducement of a tort applies even if the person being induced is unaware that his act is injurious and is not hable for that reason. Id. § 876 cmt. b; see Hoyt v. Clancey, 180 F.2d 152, 158 (8th Cir.1950) (defendant liable for false representations passed through an innocent intermediary; intermediary not liable); Davis v. Louisville Trust Co., 181 F. 10, 15 (6th Cir.1910) (same); Graham v. Ellmore, 135 Cal.App. 129, 26 P.2d 696 (1933) (same); Moyer v. Lederer, 50 Ill.App. 94 (Ill.App.Ct.1893) (same); Kuehl v. Parmenter, 195 Iowa 497, 192 N.W. 429 (Iowa 1923) (same); see also Restatement of Torts § 880 cmt. a (one who induces a witness to make a defamatory remark on the witness stand is liable even though the witness enjoys immunity from liability); Laun v. Union Elec. Co., 350 Mo. 572, 166 S.W.2d 1065, 1071 (1943) (same); Midford v. Kann, 32 A.D. 228, 52 N.Y.S. 995 (N.Y.App.Div.1898) (defendant liable for false imprisonment for directing police to arrest former employees as trespassers without regard to whether police were liable). The implication of that principle, as applied in the divided infringement context, is that a party may be liable for inducing infringement even if none of the individuals whose conduct constituted infringement would be liable, as direct infringers, for the act of infringement that was induced.[5]
Judge Linn’s dissent argues that the cited cases based liability on “breach of a direct duty” and are therefore “direct liability cases.” That misses the point being made. The cited cases all involved intermediate actors who directly caused the injury to the plaintiff, but were not liable for that injury, while the party who induced the action causing the injury was held liable. As in those cases, an inducer of infringement has a duty not to cause the acts that constitute infringement even if the parties who cause the direct injury are not liable. The law frequently imposes a duty (and liability upon breach of the duty) on parties who use innocent third parties to carry out harmful acts. See Pelster v. Ray, 987 F.2d 514, 523-24 (8th Cir.1993) (civil liability for rolling back odometer attaches to anyone in the chain of ownership who knew of fraudulent reading, but not to innocent intermediaries); Learjet Corp. v. Spenlinhauer, 901 F.2d 198, 203 (1st Cir.1990) (cause of action for fraudulent misrepresentation by aircraft owner against aircraft manufacturer was proper where manufacturer allegedly made false representations to FAA to obtain certification and owner relied on FAA certification when purchasing aircraft); Hawkins v. Upjohn Co., 890 F.Supp. 609, 611-12 (E.D.Tex.1994) (indirect reliance by plaintiffs on misrepresentations by defendants to FDA in effort to secure approval of drugs was sufficient to state claim of fraud); see also Restatement (Second) of Torts § 533 (one who makes a fraudulent misrepresentation is subject to liability to *1314 one who relies on it to his detriment, even though the misrepresentation was not made directly to the injured party).
E
Judge Linn’s dissent argues that the approach we adopt today has the effect of “defin[ing] direct infringement differently for the purposes of establishing liability under § 271(a) and (b).” That is not so, and the structure of section 271 explains why. Section 271(a) does not define the term “infringement.” Instead, it simply sets forth a type of conduct that qualifies as infringing, i.e., it provides that anyone who makes, uses, or sells, etc., any patented invention “infringes the patent.” Section 271(b) sets forth another type of conduct that qualifies as infringing, i.e., it provides that anyone who induces infringement “shall be liable as an infringer.” But nothing in the text of either subsection suggests that the act of “infringement” required for inducement under section 271(b) must qualify as an act that would make a person liable as an infringer under section 271(a).
An examination of other subsections of section 271 confirms that the statute uses the term “infringement” in a way that is not limited to the circumstances that give rise to liability under section 271(a). For example, section 271(e)(2) makes it an “act of infringement” to submit an application to the FDA for a drug, or the use of a drug, claimed in a patent; that use of the term “infringement” is not in any way tied to the use of the term “infringes” in section 271(a). Similarly, section 271(f) provides that a party shall be “liable as an infringer” if it supplies in the United States a substantial portion of the components of a patented invention in such manner as to induce the combination of those components outside the United States. Again, the statutory term “infringer” does not advert to the requirements of section 271(a); indeed, it is not even necessary that the components are ever actually assembled abroad after export. See Waymark Corp. v. Porta Sys. Corp., 245 F.3d 1364, 1367-68 (Fed.Cir.2001). Finally, section 271(g) provides that a person who imports into the United States a product made by a process patented in the United States “shall be liable as an infringer.” That provision likewise does not require that the process used to make the imported product be “infringing” in a way that would satisfy section 271(a), such as being performed by a single entity.
Judge Linn’s dissent also relies on another provision of the Patent Act, 35 U.S.C. § 281, which states, “A patentee shall have remedy by civil action for infringement of his patent.” Section 281, however, was designed to serve as a “preamble” for the sections on remedies and to ensure that an action for infringement (a “civil action”) would be triable to a jury. See H.R.Rep. No. 82-1923, at 10, 29 (1952). It also serves to ensure that only “[a] patentee” may bring a civil action for infringement. See Mentor H/S, Inc. v. Med. Device Alliance, Inc., 240 F.3d 1016, 1017 (Fed.Cir.2001). It cannot also be read to mean that any act of infringement will necessarily be remediable through a civil action; it does not, for example, give a patentee a “remedy by civil action” (i.e., in district court, see Fed.R.Civ.P. 2) against state or federal officers who are protected from suit and liability by sovereign immunity or (in the case of federal officers) who are suable only in a nonjury proceeding in the Court of Federal Claims.
The origin of section 281 is enlightening in this regard. When the bill that ultimately became the 1952 Act was first introduced in 1950 (as H.R. 9133), the subsection that would become section 271 read as follows: “Any person who makes, uses or sells any patented machine, manufacture, composition of matter or improve *1315 ment, or uses any patented process or improvement, within the territory of the United States and its Territories during the term of the patent therefor without authority, infringes the patent and shall be liable to a civil action for infringement, except as otherwise provided in this title.” (emphasis added). That version of section 271 stated only that one who directly infringes a patent shall be liable. It did not declare that any practicing of a patented invention necessarily brought with it the right of the patent owner to recover in a civil action for infringement. The emphasized language was later moved and turned into a separate section — section 281 — but with no indication that a change in meaning was intended. There is certainly no suggestion in the legislative history (or in subsequent caselaw) that section 281 was meant to restrict the scope of liability for induced infringement under section 271(b) to cases in which a single entity would be liable for direct infringement.
Looking to case law, Judge Linn’s dissent relies heavily on prior decisions of this court and on the Supreme Court’s decision in Aro, contending that those authorities compel us to hold that liability for induced infringement of a method claim depends on showing that a single induced entity would be liable for direct infringement of the claim. While the BMC case stands for that proposition, our earlier precedents, and the Supreme Court’s decision in Aro, do not so hold.
In reciting the rule that indirect infringement requires a single entity to commit all the acts necessary to constitute direct infringement, the court in BMC cited this court’s earlier opinion in Dynacore Holdings Corp. v. U.S. Philips Corp., 363 F.3d 1263, 1272 (Fed.Cir.2004). The cited portion of the Dynacore case stands for the proposition that indirect infringement “can only arise in the presence of direct infringement.” 363 F.3d at 1272. That proposition, however, is different in an important respect from the proposition articulated in BMC. Dynacore required that there be infringement in order for there to be inducement of infringement. As noted above, that is a sound and uncontroversial proposition. BMC, however, extended that proposition to require that a single party commit the entire act of direct infringement, an extension that is not supported by the decision in Dynacore[6] That broader proposition invites evasion of the principles of patent infringement and serves no policy-based purpose. If an entity has induced conduct that inflinges a patent, there is no justification for immunizing the inducer from liability simply because no single party commits all of the components of the appropriative act.
Both Limelight and Epic (like Judge Linn’s dissent) rely on the Supreme Court’s decision in Aro in support of their contention that liability for inducement requires that a single party be liable for direct infringement, but Aro does not stand for that proposition. Aro dealt with a patent for automobile convertible tops, including the fabric and supporting structures. 365 U.S. at 337, 81 S.Ct. 599. The accused product was fabric that was intended to replace the original fabric in the convertible top when it wore out. The *1316 specific question addressed by the Court was “does the car owner [directly] infringe (and the supplier contributorily infringe) the combination patent when he replaces the spent fabric without the patentee’s consent?” Id. at 339, 81 S.Ct. 599. Because the Court concluded that replacing the fabric was not an infringing “reconstruction,” but instead was a permissible “repair,” the Court held that the car owner did not infringe the patent. And because there was no direct infringement, there was no contributory infringement. As the Court explained: “In a word, if there is no infringement of a patent there can be no contributory infringer[.]” Id. at 345, 81 S.Ct. 599. Importantly, it was because the purchaser of the fabric was engaged in repair rather than reconstruction — and thus was not guilty of infringement at all— that the Court found there could be no contributory infringement. That case therefore does not stand, expressly or implicitly, for the proposition that there can be no induced infringement if there is actual infringing conduct but the acts necessary to constitute the infringement are committed by more than one party.
In the course of its analysis, the Aro Court quoted from a dissenting opinion in an earlier case, which stated that “if the purchaser and user [of a product] could not be amerced as an infringer certainly one who sold to him ... cannot be amerced for contributing to a non-existent infringement.” Id. (quoting Mercoid Corp. v. Mid-Continent Inv. Co., 320 U.S. 661, 674, 64 S.Ct. 268, 88 L.Ed. 376 (1944) (Roberts, J., dissenting)). Although the reference to a direct infringer being “amerced” as an infringer could suggest that the Court considered liability for direct infringement as a predicate for indirect infringement, the Court in both cases was addressing direct infringement involving only a single party.
Unlike the present case, which deals with method claims, Aro dealt with product claims. In the case of a product claim, the party that adds the final element to the combination “makes” the infringing product and thus is liable for direct infringement even if others make portions of the product. See Cross Med. Prods., 424 F.3d at 1312 (holding there was a genuine issue of fact as to whether surgeons infringe by “making” the claimed product when they complete the last limitation (contacting the anchor seat of the device with bone)). For product claims, whenever the product is made, used, or sold, there is always a direct infringer. Hence, the Am Court, dealing only with product claims, was not presented with the divided infringement question we address today. For that reason, the Court’s allusion to the potential liability of a direct infringer cannot reasonably be treated as suggesting that, as a predicate for indirect infringement, all of the steps necessary to constitute direct infringement of a method claim must be committed by a single party.
In cases prior to BMC, this court on numerous occasions recited the familiar and uncontroversial proposition that one of the elements of induced infringement is proof that there has been direct infringement. See, e.g., Micro Chem., Inc. v. Great Plains Chem. Co., 103 F.3d 1538, 1549 (Fed.Cir.1997); Joy Techs., Inc. v. Flakt, Inc., 6 F.3d 770, 774 (Fed.Cir.1993); Met-Coil Sys. Corp. v. Korners Unlimited, Inc., 803 F.2d 684, 687 (Fed.Cir.1986). On occasion, the court described that principle by reference to direct infringement by “some party” or the party accused of direct infringement in the case. See, e.g., Moba, B.V. v. Diamond Automation, Inc., 325 F.3d 1306, 1318 (Fed.Cir.2003); Epcon Gas Sys., Inc. v. Bauer Compressors, Inc., 279 F.3d 1022, 1033 (Fed.Cir.2002); Crystal Semiconductor Corp. v. TriTech Microelectronics Int’l, Inc., 246 F.3d 1336, 1351 *1317 (Fed.Cir.2001); Kendall Co. v. Progressive Med. Tech., Inc., 85 F.3d 1570, 1573 (Fed.Cir.1996); C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc., 911 F.2d 670, 673 (Fed.Cir.1990). But in none of those cases did the court hold that, as a predicate for a finding of indirect infringement, all the steps of a method claim must be performed by the same entity. Those cases trace the rule that direct infringement is a prerequisite for induced indirect infringement back to the Supreme Court’s opinion in Aro and its predecessors which, as discussed above, did not require that all the infringing steps be performed by a single actor.
The cases that predated Aro likewise did not apply the “single direct infringer” requirement as a predicate for induced infringement; instead, they emphasized that what was induced was the fact of infringement, not liability for direct infringement by a single actor. In one of the leading early cases, Judge (later Chief Justice) Taft wrote for the Sixth Circuit that it was “well settled that where one makes and sells one element of a combination covered by a patent with the intention and for the purpose of bringing about its use in such a combination he is guilty of contributory infringement.” Thomson-Houston Elec. Co. v. Ohio Brass Co., 80 F. 712, 721 (6th Cir.1897). Most of the early cases involved product claims, not process claims, and therefore the ultimate purchaser or user of the patented invention was a direct infringer, so the problem of divided infringement did not arise. Where it did arise, however, courts continued to look to the doctrine of induced (or contributory) infringement as a basis for liability of parties who had induced the infringing conduct.
For example, in Solva Waterproof Glue Co. v. Perkins Glue Co., 251 F. 64 (7th Cir.1918), the defendants performed one step of a two-step process claim and relied upon their customers to perform the second step of the process. The court held the defendant to be a contributory infringer. It explained that the “rule of law in such case is that one who makes and sells one element of a patented combination with the intention and for the purpose of bringing about its use in such a combination is guilty of contributory infringement.” 251 F. at 73-74.
Similarly, in Peerless Equipment Co. v. W.H. Miner, Inc., 93 F.2d 98 (7th Cir.1937), the Seventh Circuit dealt with a ease closely analogous to the cases at bar. In that case, which involved a patent containing process claims, the defendant performed all the steps of the claimed process except the last. The purchaser would perform the last step after delivery of the products. The court observed that the defendant knew that the purchasers would perform that step. Accordingly, the court held that the defendant was “guilty of contributory infringement of each of the process claims.” 93 F.2d at 105.
This court reached the same result in Fromson v. Advance Offset Plate, Inc., 720 F.2d 1565 (Fed.Cir.1983). The patent in that case involved both product and process claims. As in the Peerless case, the defendant performed all but the last step of the recited process; the last step was performed by the defendant’s customers. Because no single party performed all the steps, the court stated that the defendant “cannot be liable for direct infringement.” Id. at 1568. However, it added, the defendant “could be liable for contributory infringement.” Id. at 1567-68. That case thus provides direct support for the two key propositions at issue in this case: (1) that liability for direct infringement requires that some actor perform all of the limitations (including the steps of a process claim), either personally or vicariously; and (2) that induced infringement can be *1318 found even if there is no single party who would be liable for direct infringement.
In summing up its objections to this court’s ruling, Judge Linn’s dissent argues that the court today is making a “sweeping change to the nation’s patent policy” that goes beyond the proper scope of the court’s authority and that a step such as the one taken by the en banc court today should be left to Congress. Of course, the question whether the majority’s position constitutes a change in the law, or whether the dissent’s position would constitute a change, depends on what one thinks the prior rule was. Based on the legislative history, general tort principles, and prior case law, including this court’s decision in Fromson, we believe that BMC and the cases that have followed it changed the pre-existing regime with respect to induced infringement of method claims, although admittedly at that time there were relatively few cases in which that isfeue had arisen. In either event, the court’s task is to attempt to determine what Congress had in mind when it enaetéd the induced infringement statute in 1952. At the end of the day, we are persuaded that Congress did not intend to create a regime in which parties could knowingly sidestep infringement liability simply by arranging to divide the steps of a method claim between them. And we have found no evidence to suggest that Congress intended to create different rules for method claims than for other types of claims. While we believe that our interpretation of section 271(b) represents sound policy, that does not mean that we have adopted that position as a matter of policy preference. In the process of statutory interpretation, it is relevant to ask what policy Congress was attempting to promote and to test each party’s proposed interpretation by asking whether it comports with that policy. In these cases, we conclude that it is unlikely that Congress intended to endorse the “single entity rule,” at least for the purpose of induced infringement, advocated by Epic and Limelight, which would permit ready evasion of valid method claims with no apparent countervailing benefits.
Ill
In the McKesson case, Epic can be held liable for inducing infringement if it can be shown that (1) it knew of McKesson’s patent, (2) it induced the performance of the steps of the method claimed in the patent, and (3) those steps were performed. McKesson preserved its claim of induced infringement, even though this court’s decisions in BMC and Muniauction made the inducement claim difficult to maintain. McKesson is entitled to litigate that issue on remand to the district court.
In the Akamai case, although the jury found that the content providers acted under Limelight’s direction and control, the trial court correctly held that Limelight did not direct and control the actions of the content providers as those terms have been used in this court’s direct infringement cases. Notwithstanding that ruling, under the principles of inducement laid out above, Limelight would be liable for inducing infringement if the patentee could show that (1) Limelight knew of Akamai’s patent, (2) it performed all but one of the steps of the method claimed in the patent, (3) it induced the content providers to perform the final step of the claimed method, and (4) the content providers in fact performed that final step.
Although the patentee in Akamai did not press its claim of induced infringement at trial, it argues this court should overrule “the mistaken view that only a single entity can infringe a method claim.” That argument, while focused on direct infringement, is ■ critical to the conclusion that divided infringement can give rise to liability, whether under a theory of direct infringement or induced infringement. *1319 While we do not hold that Akamai is entitled to prevail on its theory of direct infringement, the evidence could support a judgment in its favor on a theory of induced infringement. For that reason, we conclude that Akamai should be given the benefit of this court’s ruling disapproving the line of divided infringement cases that the district court felt compelled to follow. We therefore reverse the judgment in both cases and remand in both cases for further proceedings on the theory of induced infringement.
REVERSED and REMANDED

. Because liability for inducement, unlike liability for direct infringement, requires specific intent to cause infringement, using inducement to reach joint infringement does not present the risk of extending liability to persons who may be unaware of the existence of a patent or even unaware that others are practicing some of the steps claimed in the patent.

. Federico’s commentary, first published in 1954, has been cited by this court as constituting "an invaluable insight into the intentions of the drafters of the Act.” Symbol Techs., Inc. v. Lemelson Med., 277 F.3d 1361, 1366 (Fed.Cir.2002).

. The cases to which the legislation was principally directed were Mercoid Corp. v. Mid-Continent Investment Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376 (1944), and Mercoid Corp. v. Minneapolis-Honeywell Regulator Co., 320 U.S. 680, 64 S.Ct. 278, 88 L.Ed. 396 (1944), which extended the patent misuse doctrine of Carbice Corp. of America v. American Patents Development Corp., 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819 (1931), and Leitch Manufacturing Co. v. Barber Co., 302 U.S. 458, 58 S.Ct. 288, 82 L.Ed. 371 (1938). See Contributory Infringement of Patents: Hearings Before the Subcomm. on Patents, Trademarks, and Copyrights of the H. Comm, on the Judiciary, 80th Cong. 4 (1948) (statement of G. Rich on behalf of the New York Patent Law Association).

. Shuttlesworth v. City of Birmingham, 373 U.S. 262, 83 S.Ct. 1130, 10 L.Ed.2d 335 (1963), cited in Judge Linn's dissent, is inapposite. In that case, the underlying act was innocent, not because of any lack of scienter or immunity on behalf of the principals, but because the act the petitioners were charged with aiding and abetting did not constitute a crime. Id. at 265, 83 S.Ct. 1130 (“There was no evidence that any of the demonstrations which resulted from the meeting were disorderly or otherwise in violation of law.”) By analogy, in patent law a party would not be liable for inducing infringement by encouraging others to engage in conduct that is not within the claims of the patent in suit.

. The same rule extending liability for "intentionally inducing or encouraging direct infringement” has been adopted in copyright law, see Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930, 936, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005), but the issue presented in this case — -whether the induced acts of infringement must be performed by a single entity that would be liable for infringement — does not appear to have been addressed in copyright cases.

. The Dynacore case dealt with a patent on a type of local area network. 363 F.3d at 1266. The issue in the case was whether manufacturers of networking equipment that was capable of being used to form an infringing network were liable for indirect infringement. Id. at 1272. Dynacore alleged only a "hypothetical direct infringement” and did not show that any specific infringing network was ever created. The court held that liability for indirect infringement required proof that actual infringement occurred, but the court did not hold that Dynacore could meet its burden of showing direct infringement only by proving that a single entity created the infringing network.