REYNA, Circuit Judge,
with whom RADER, Chief Judge, and NEWMAN, LOURIE and WALLACH, Circuit Judges,
join, dissenting from the denial of the petition for rehearing en banc.
The Commil majority established a substantive, precedential change in patent law by expressly “holding] that evidence of an accused inducer’s good-faith belief of invalidity may negate the requisite intent for induced infringement.” Commil USA, LLC v. Cisco Sys., Inc., 720 F.3d 1361, 1368 (Fed.Cir.2013). Its analysis may be summed by its expressed view that because “[i]t is axiomatic that one cannot infringe an invalid patent” there is “no principled distinction between a good-faith belief of invalidity and a good-faith belief of non-infringement for the purpose of whether a defendant possessed the specific intent to induce infringement of a patent.” Id.
By holding that a good faith belief in the invalidity of a patent may negate the requisite intent for induced infringement, the two-judge Commil majority created a new noninfringement defense to induced infringement that is premised on the accused infringer’s belief of invalidity. As Judge Newman aptly points out in her dissent, “This absolution applies, according to the panel majority, although the patent receives the presumption of validity, and validity is sustained in litigations.” (Newman, J., dissenting from the denial of the petition for rehearing en banc, at 1.)
Because I believe the Commil majority opinion is without foundation in law and precedent, and for the reasons stated below, I respectfully dissent from the vote taken of the court to not conduct an en banc review of the majority opinion in Commil.
I.
My primary dispute with the majority holding is that it wrongly rearranges the legal foundation that underpins the enforceability of valid patents and the finding of liability for infringement.
First, the induced infringement statute states simply that “[wjhoever actively in *701 duces infringement of a patent shall be liable as an infringer.” 35 U.S.C. § 271(b). The law recognizes that the statute’s use of the words “actively induces” imparts an intent requirement into the statute. As stated by the Supreme Court, “[t]he addition of the adverb ‘actively’ suggests that the inducement must involve the taking of affirmative steps to bring about the desired result.” Globalr-Tech. Appliances, Inc. v. SEB S.A., — U.S.-, 131 S.Ct. 2060, 2065, 179 L.Ed.2d 1167 (2011). In § 271(b), the “desired result” that a party accused of inducement must be affirmatively seeking to bring about is defined in the statute as simply “infringement.”
The term “infringement” is used consistently throughout § 271 to mean that all of the limitations of a patent claim 'are satisfied by an accused product or accused conduct. See, e.g., TecSec, Inc. v. Int'l Bus. Mach. Corp., 731 F.3d 1336, 1351 (Fed.Cir.2013) (citations omitted) (“An act of infringement occurs when all the elements of a claimed product or method are met by the accused device or process.”). In Globalr-Tech, the Court concluded that in order to satisfy the intent element of induced infringement under § 271(b), an accused infringer must possess “knowledge that the induced acts constitute patent infringement,” Global-Tech., 131 S.Ct. at 2068, but it did not alter the fundamental meaning of “infringement.” , Our recent en banc decision in Akamai further confirms that “infringement” in the context of “induced infringement” is resolved solely with reference to the limitations of a patent claim. See Akamai Techs., Inc. v. Limelight Networks, Inc., 692 F.3d 1301, 1306 (Fed.Cir.2012) (“we hold that all steps of á claimed method must be performed in order to find induced infringement”).
The legislative history explains that the language of § 271(b) “recites in broad terms that one who aids and abets an infringement is likewise an infringer.” H.R.Rep. No. 82-1923, at 9. Neither the statute nor its legislative history provides that one who knowingly and successfully induces another to engage in conduct that infringes a valid patent can escape liability by showing it held a good faith belief that the patent was invalid. Indeed, the rationale for imposing liability on the party who is inducing infringement is simple: one who causes, urges, encourages, or aids in an infringement -is just as, if not more, culpable for the invasion of-the patentee’s exclusive rights than those who actually perform the acts of infringement. See generally Akamai 692 F.3d at 1309-13. Yet, under the majority’s holding, an accused inducer that is deriving a benefit by knowingly and intentionally inducing an unsuspecting third party to directly infringe patent rights can itself escape liability based on a belief that the patent is invalid while the. unsuspecting third party cannot. This situation is directly contrary to the plain language and purpose of the induced infringement statute.
II.
Second, infringement and invalidity are separate issues under the patent code and our precedent. This is not controversial. We have “long recognized that patent infringement and invalidity are separate and distinct issues.” Pandrol USA LP v. Airboss Ry. Prods., Inc., 320 F.3d 1354, 1365 (Fed.Cir.2003). This distinction is further reflected in the organization of the patent code, which places the issues of infringement and invalidity in separate “Parts.” Compare 35 U.S.C. §§ 251-329 (Part III: “Patents and Protection of Patent Rights”), with 35 U.S.C. §§ 100-212 (Part II: “Patentability of Inventions and Grant of Patents”).
Given this, there is no reasonable basis to impute questions of invalidity or liability *702 into § 271(b) through the term “infringement.” If a patent is found invalid, that is a complete defense to liability because it negates the patent’s existence and thereby extinguishes any exclusionary rights. Conversely, if there is a- patent — i.e., it is not invalid — then the question is merely whether there has been conduct that actively induces acts of infringement per se. This too is not controversial under our precedent because we have long recognized that “[t]hough an invalid claim cannot give rise to liability for infringement, whether it is infringed is an entirely separate question capable of determination without regard to its validity.” Medtronic, Inc. v. Cardiac Pacemakers, Inc., 721 F.2d 1563, 1583 (Fed.Cir.1983) (emphasis added).
Despite that “Supreme Court precedent and our cases make clear that' patent infringement and patent validity are treated as separate issues,” Pandrol, 320 F.3d at 1365, the Commil majority nevertheless imputes questions of invalidity into induced infringement under the guise of “intent.” It attempts to justify this departure from controlling precedent on the premise that “[i]t is axiomatic that one cannot infringe an invalid patent.” Commil, 720 F.3d at 1368. But this “axiom” is materially wrong in the present context and does not withstand scrutiny in view of controlling precedent. See, e.g., Medtronic, 721 F.2d at 1583. A more accurate statement of our precedent is that liability for patent infringement depends on an infringed claim being valid and enforceable; that is, one cannot be liable for infringement of an invalid patent.
III.
Third, the Commil majority holding wrongly conflates the defense of nonin-fringement with the defense of invalidity. “An important limitation on the scope of induced infringement is that inducement gives rise to liability only if the inducement leads to actual infringement.” Akamai 692 F.3d at 1308. The Commil majority expands the inquiry regarding noninfringement to include invalidity on grounds that it “see[s] no principled distinction between a good-faith belief of invalidity and a good-faith belief of non-infringement for the purpose of whether a defendant possessed the specific intent to induce infringement of a patent.” Commil, 720 F.3d at 1368. This statement ignores the statutorily-mandated presumption of validity, see § 282(a), in that it sets up all patents as invalid, at least in the mind of the inducer. In doing so, the majority strikes at the very heart of the presumption of validity by eroding patent rights that have been duly granted by the PTO based solely on an erroneous — albeit good faith — belief that the PTO erred in granting the patent. This has profound and negative implications that are not contemplated by the patent statute.
Conflating infringement and invalidity also unnecessarily complicates the induced infringement inquiry. In this regard, infringement and non-infringement are opposite sides of the same coin whereas infringement and invalidity are altogether entirely different coins. The intent element of § 271(b) is met when the accused infringer acts with actual knowledge of the patent claim and was “actively inducing” conduct that it knew to be within the scope of an asserted claim. See Akamai 692 F.3d at 1308. Whether the accused in-fringer held a good faith belief that it was inducing conduct that fell outside the scope of the claims is directly relevant to this intent inquiry. But whether the accused infringer held a good faith belief in invalidity — e.g., an erroneous belief regarding obviousness — is wholly unrelated to the accused infringer’s conduct vis-á-vis *703 the limitations of a presumptively valid patent claim. These fundamental differences between the defenses provide a reasoned and legally sound basis for differentiating between a good faith belief of non-infringement and a good faith belief in invalidity in the context of induced infringement.
There exists another axiom of more universal application that is appropriate here: “if it’s not broken, don’t fix it.” The Com-mil majority has strained to fix current law without ever showing exactly what is broken, and its fix has been to create an entirely new infringement defense, a new rule of law.
In addition, the majority does not instruct the lower courts how they are to apply the fix. Is the new rule a question of fact? Is it a question of law? Is it a question of law with underlying factual basis? Should the question of good faith belief of invalidity be tried along with the invalidity issues, or perhaps before any other issues are heard given its determinative effect on the outcome of the case?
A grave concern that I have with the new rule is that it fundamentally changes the operating landscape, much like waking up and unexpectedly finding that the sky is now green. The new rule is a powerful tool in patent litigation in that it establishes an escape hatch from liability of infringement that is not now in; the statute. This has a compromising effect on the only axiom that we should all observe, and that is issued patents are presumed valid.